IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON


THOMAS STONE,                             :

                       Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                       Defendant.       :

Case No. 3:12-cv-197

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## DECISION AND ORDER

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938);

1

*Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof

shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on April 17, 2008, alleging disability from September 1, 2004, due to obesity, high blood pressure, asthma, and a lumbar spine impairment. PageID 206-15; 209; 241. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 139-42; 144-50; 153-65. Administrative Law Judge Thomas McNichols held a hearing, PageID 86-137, and subsequently determined that Plaintiff is not disabled. PageID 62-79. The Appeals Council denied Plaintiff's request for review, PageID 54-56, and Judge McNichols' decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff met the insured status requirements of the Act through December 31, 2009. PageID 65, ¶ 1. Judge McNichols found further that Plaintiff has severe obesity, chronic low back, right hip, and bilateral knee pain, history of sleep apnea, history of asthma, and history of mood disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. PageID68, ¶ 4. Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. PageID 70, ¶ 5. Judge McNichols then used section 201.19 of the grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 77, ¶ 10. Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 78.

The record contains Plaintiff's treatment notes from the Cassano Health Center dated April 8, 1996, through July 24, 2008. PageID 387-449; 475-88; 520-46; 563-609. Those records reveal that Plaintiff received treatment at that facility for various medical conditions including back pain, morbid obesity, edema of his legs, degenerative arthritis of the knees, hypertension, chronic hip pain, and obstructive sleep apnea. *Id.* Those notes also reveal that Plaintiff consulted with neurosurgeon Dr. West in January, 2002, who reported that Plaintiff had decreased ranges of spinal motions, and that his diagnosis was lumbar region disc bulge. *Id.* A February 11, 2002, MRI of Plaintiff's lumbar spine revealed degenerative disc disease at L5-S1 with evidence of a small annular tear. *Id*. A June 18, 2007, x-ray of Plaintiff's right knee revealed mild degenerative changes and November, 2009, xrays of Plaintiff's lumbosacral spine and pelvis were negative. *Id.* A March 17, 2012 MRI of Plaintiff's pelvis and right hip revealed a moderate disc protrusion central and to the left causing effacement of the left S1 nerve root and mild osteophytes at L4-5. *Id.*

The record contains copies of emergency room treatment records which reflect that during the period March 16, 2001, to September 17, 2002, Plaintiff sought treatment for blurred vision, a dog bite with follow-up rabies shots, asthma, and a toothache. PageID 342-57; 363-69. On each occasion, Plaintiff was treated and released. *Id.*

In February, 2002, treating physician Dr. Foley of the Hopeland Health Center reported that Plaintiff's diagnoses were morbid obesity, asthma, possible Pickwickian syndrome, spina bifida occulta, and ninth grade education, that he was able to stand/walk and sit each for three hours in an eight-hour day and for one hour without interruption, and that he was able to lift/carry up to twenty pounds frequently. PageID 360-62.

On October 18, 2007, a physician with the Cassano Health Center reported that Plaintiff was in the process of being worked-up for medical conditions, had been recommended for a gastric bypass, and that he was unable to work. PageID 370.

Examining physician Dr. Danopulos reported on July 17, 2008, that Plaintiff alleged he was not able to work due to low back pain, right hip pain, right knee pain, hypertension, asthma with sleep apnea, overweight, and depression, that he appeared with a cane that he said he has used since 2003, and that he has a ninth grade education in special education with restricted reading and writing. PageID 453-64. Dr. Danopulos also reported that Plaintiff was sixty-eight and one-half (68½) inches tall, weighed four hundred forty-one (441) pounds, had increased chest dimensions due to obesity, his lungs were clear, expiration was prolonged, both knees had restricted ranges of motion, both hips had restricted ranges of motions and the right hip was painful, and that he had a free gait helped by a cane to protect him from falling down. *Id.* Dr. Danopulos noted that Plaintiff's spine was painless to pressure, he had pain in both buttocks and flanks mostly due to motion, squatting and arising from squatting triggered right knee pain, his lumbosacral spine motions were restricted and triggered pain in both flanks, and that he was unable to perform toe and heel gait. *Id.* Dr. Danopulos also noted that Plaintiff's neurological examination was normal and that xrays of his right hip and lumbar spine were normal. *Id.* Dr. Danopulos noted further that the objective findings were lumbar spine arthralgias with history of spina bifida not documented on current xrays, right hip arthralgias, bilateral knee arthralgias, well-controlled blood pressure, history of asthma that could not be documented, restrictive lung disease triggered by his unusual morbid obesity, history of sleep apnea not using his CPAP machine, unusual morbid obesity, and circumstantial depression. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work-related activities was restricted considerably by his unusual

morbid obesity which did not allow him to move around properly, his restrictive lung disease which was triggered by his unusual morbid obesity, and sleep apnea for which he did not use the CPAP machine. *Id.*

Examining psychologist Dr. Leisgang reported on July 19, 2008, that Plaintiff left school in the eighth grade, was "in special education during elementary school but was in regular classes during high school", had difficulty with reading, writing, and math, received speech therapy, performed poorly in school, and had not earned his GED. PageID 466-72. Dr. Leisgang also reported that Plaintiff was cooperative, walked with a cane, was somewhat unusual in his interpersonal style and had difficulty directly answering questions, appeared to be somewhat anxious, displayed no flight of ideas, had limited articulation, displayed noticeable facial flushing and fidgeted with his hands, and appeared to be in good spirits. *Id.* Dr. Leisgang noted that Plaintiff alluded to symptomatology suggestive of posttraumatic stress disorder, he was preoccupied with his difficulties and alluded to intrusive thoughts, was alert and oriented, and that he appeared to have judgment sufficient for him to make decisions affecting his future and to conduct his own living arrangements. *Id.* Dr. Leisgang noted that test results revealed that Plaintiff had a verbal IQ of 82, performance IQ of 75, and full scale IQ of 77 indicating that he was functioning in the borderline range of intelligence. *Id.* Dr. Leisgang identified Plaintiff's diagnosis as mood disorder NOS and she assigned him a GAF of 51. Dr. Leisgang opined that Plaintiff's abilities to relate to others, to maintain attention, concentration, persistence and pace, and to withstand the stress and pressure associated with day-to-day work activity were moderately impaired and that his ability to understand, remember, and follow simple instructions was mildly impaired. *Id.*

Treating physician Dr. Smith reported on July 24, 2008, that Plaintiff's height was sixty-nine (69) inches, his weight was four hundred seventy-one (471) pounds his medical condition was morbid obesity, he was depressed, he should consider a gastric bypass procedure, that he was able to stand/walk and sit each for one-quarter hour in an eight-hour day and for one-quarter hour without interruption, lift/carry up to five pounds, and that he was unemployable. PageID 492-93.

On August 17, 2009, treating physician Dr. Rizle reported that Plaintiff's diagnoses were morbid obesity, degenerative disc disease, and hypertension, he was depressed, gastric by-pass was being considered, that he was able to stand/walk and sit each for one-quarter hour in an eight-hour day and for one-quarter hour without interruption, lift/carry up to five pounds, and that he was unemployable. PageID 552-53.

Plaintiff alleges that the Commissioner erred by not considering whether his obesity met or equaled a Listing pursuant to SSR 02-1p, by rejecting treating physician Dr. Smith's opinion, and by failing to find that he was not entirely credible. (Doc. 8).

Plaintiff argues in support of his first Error that the Commissioner erred by failing to properly consider the effects of his obesity on his ability to perform work-related activities and therefore violated Social Security Ruling ("SSR") 92-01p, 2000 WL 628049 (Sept. 12, 2002).

SSR 02-01p explains the Commissioner's policy and protocol on the evaluation of obesity and provides that the Commissioner will do "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.* The Rule also explains that a claimant's obesity must be considered not only at Step 2 of the sequential evaluation process, but also at the subsequent steps. *Id.* SSR 02-1p "does not mandate a particular mode of analysis but merely directs the ALJ to consider the claimant's obesity in

8

combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security,* 359 Fed..Appx. 574, 577 (6th Cir. 2009), citing *Bledsoe v. Barnhart,* 165 Fed. Appx. 408, 411-12 (6th Cir. 2006)(internal quotation omitted). "It is a mischaracterization to suggest that SSR 02-01p offers any particular procedural mode of analysis for obesity disability claimants." *Bledsoe,* 165 Fed. Appx. at 411.[1]

In considering Plaintiff's allegations of disability, Judge McNichols specifically noted that the "primary impairment and the source of many of Plaintiff's underlying problems is obesity at a height of 72 inches and weight of 487 pounds." PageID 66. In addition, Judge McNichols noted that Plaintiff's obesity aggravated his other impairments and body systems, and that the medical experts of record consistently documented Plaintiff's obesity. PageID 72; 73. Judge McNichols determined that Plaintiff's obesity is a severe impairment and he recognized its effects on his other alleged impairments. That is exactly what SSR 02-01p requires. The Commissioner did not err by failing to properly evaluate Plaintiff's obesity pursuant to SSR 02-01p.

Plaintiff argues in support of his second error that the Commissioner erred by rejecting treating physicians Dr. Smith's and Dr. Rizle's opinions. Plaintiff specifically points to Dr. Smith's July 24, 2008, opinion and Dr. Rizel's August 17, 2009, opinion.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ

---

[1] Plaintiff argues that *Nejat* and *Bledsoe* are distinguishable on the basis that, unlike the Commissioner's finding here that his obesity is a severe impairment, in both *Nejat* and *Bledsoe* the Commissioner failed to find the claimant's obesity was severe. Doc. 13, PageID 669. However, for purposes of the present matter, that is a distinction without a difference.

to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rule 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R.

10

§404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

First, although Judge McNichols was somewhat skeptical as to whether Drs. Smith and Rizle qualify as "treating physicians", see PageID 70, he nevertheless evaluated those physicians' opinions under the treating physician rules. In rejecting Drs. Smith's and Rizel's opinions, Judge McNichols noted that their opinions were not well supported by objective findings and were inconsistent with other evidence. PageID 71.

When Dr. Smith offered his July 24, 2008, opinion that Plaintiff is disabled, he provided few objective clinical findings to support that opinion. PageID 492-93. Specifically, other than

11

noting that Plaintiff's extremities were edematous and his abdomen obese, Dr. Smith did not note any other abnormalities. *Id.* In support of his August 17, 2009, opinion that Plaintiff is unemployable, Dr. Rizle noted that Plaintiff had, at most, limited ranges of motion, joint tenderness, and edema of his lower extremities. PageID 552-53. In addition, Dr. Rizle opined that Plaintiff's alleged impairments were expected to last between thirty days and nine months. PageID 553. That, of course, does not satisfy the durational requirement of the Act.

In addition to Drs. Smith's and Rizle's opinions not being supported by their objective findings, as Judge McNichhols determined, they are also inconsistent with other evidence. PageID 71-72. For example, a February, 2002, MRI of Plaintiff's lumbar spine revealed evidence of degenerative disc disease and a small annular tear; June, 2007, x-rays of Plaintiff's right knee revealed, at worst, mild findings; November, 2009 x-rays of Plaintiff's lumbosacral spine and pelvis were negative; and a March, 2012, MRI of Plaintiff's pelvis and right hip indicated, at worst, a moderate disc protrusion and mild osteophytes. Finally, Dr. Smith's and Dr. Rizle's opinions are inconsistent with the opinions of Dr. West, Dr. Foley, and Dr. Danopulos' findings, as well as with the reviewing physicians' opinions. See PageID 512-19; 551.

Under these circumstances, the Commissioner had adequate bases for rejecting Dr. Smith's and Dr. Rizel's opinions and he properly articulated those reasons.

Plaintiff's final argument is that the Commissioner erred by failing to find that he was entirely credible.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v.*

*Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers, supra* (citation omitted). Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

In *Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir. 1994), the Court set out seven (7) factors which the ALJ is to consider when evaluating a claimant's subjective complaints. The Court derived those factors from 20 C.F.R. § 404.1529(c)(3). *Id.* However, while the *Felisky* Court applied each of the factors in the case before it, *Felisky* does not require that the ALJ engage in such an extensive analysis in every decision. *Bowman v. Chater,* No. 96-3990, 1997

WL764419 at *4 (6th Cir. Nov. 26, 1997). It does require that in addition to objective medical evidence the ALJ consider non-medical factors. *Id.*

Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996), ("SSR 96-07p"), provides that the Commissioner may not disregard a claimant's subjective statements concerning his ability to work "solely because they are not substantiated by objective medical evidence". *See, Saddler v. Commissioner of Social Security,* No. 98-5440, 1999 WL 137621 at *2 (6th Cir. Mar. 4, 1999)[173 F.3d 429 table], *citing,* SSR 96-7p. SSR 96-7p directs the Commissioner to provide "specific reasons" for making a credibility determination. *See, Spicer v. Apfel,* No. 00-5687, 2001 WL 845496 at *1 (6th Cir. July 16, 2001).

The Court notes that Judge McNichols properly identified and discussed the applicable *Felisky* factors. PageID 74-76. Specifically, in evaluating Plaintiff's credibility, Judge McNichols noted that Plaintiff's testimony was inconsistent as to the length of time he is able to sit as well as his functional limitations with respect to his upper extremities. PageID 75. That is an accurate analysis of Plaintiff's hearing testimony. See, *e.g.,* PageID 110-13; 121. In addition, Judge McNichols noted that Plaintiff has had only conservative treatment for his alleged impairments and that is supported by the record. Further, the record reveals that Plaintiff takes only over-the-counter medication for pain and he testified that he has no side effects from any medication. PageID 334, 106. Finally, Plaintiff's allegations and subjective complaints are not supported by the medical evidence particularly the objective tests, Drs. West's and Foley's opinions, Dr. Danopulos' findings, and the reviewing physicians' opinions.

The Commissioner did not err in evaluating Plaintiff's credibility.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686

14

(S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be affirmed.

February 22, 2013                                  *s/ Michael R. Merz*
                                                   United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).